IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

_____
                                                    )
UNITED STATES OF AMERICA, STATE OF    )
INDIANA, and STATE OF OHIO,                  )
                                                    )
                    Plaintiffs,                      )
                                                    )
          v.                                         )          Civil Action No. 2:19-cv-179
                                                    )
ARCELORMITTAL USA LLC,                        )
ARCELORMITTAL BURNS HARBOR LLC,       )
and ARCELORMITTAL CLEVELAND LLC,       )
                                                    )
                    Defendants.                    )
_____)

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and acting at the request of the Administrator of the United States Environmental Protection

Agency ("EPA"), the State of Indiana, by the authority of the Attorney General of the State of

Indiana and acting on behalf of the Indiana Department of Environmental Management

("IDEM"), and the State of Ohio, by the authority of the Attorney General of Ohio and at the

request of the Director of the Ohio Environmental Protection Agency ("Ohio EPA"), hereby file

this Complaint and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought against defendants, ArcelorMittal USA LLC

("ArcelorMittal USA"), ArcelorMittal Burns Harbor LLC ("ArcelorMittal Burns Harbor"), and

ArcelorMittal Cleveland LLC ("ArcelorMittal Cleveland") (collectively, "ArcelorMittal" or

"Defendants"), pursuant to Sections 113(b) and 304(a)(1) of the Clean Air Act ("CAA"), 42

U.S.C. §§ 7413(b) and 7604(a)(1), and pursuant to the laws of Indiana and Ohio, for injunctive relief and civil penalties for violations at three steel mills in Indiana and one steel mill in Ohio (collectively, "the Facilities").

2.      As alleged with greater specificity below, Defendants have violated certain statutory and regulatory requirements applicable to the Facilities arising under:  (i) the National Emission Standards for Hazardous Air Pollutants ("NESHAP") promulgated under CAA Section 112, 42 U.S.C. § 7412; (ii) the New Source Performance Standards ("NSPS") promulgated under CAA Section 111, 42 U.S.C. § 7411; (iii) the CAA's Part 70 Title V permit requirements, 42 U.S.C. § 7661 ("Title V Permit"); and (vi) the federally enforceable State Implementation Plans ("SIPs") for Indiana and Ohio approved by EPA pursuant to CAA Section 110, 42 U.S.C. § 7410, which incorporate and/or implement the above-listed federal requirements.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      This Court has supplemental jurisdiction over the State law claims alleged herein pursuant to 28 U.S.C. § 1367(a), because the State claims are related to the federal claims and arise from the same case or controversy.

5.      Venue is proper in this District pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because some of the violations which constitute the basis of this Complaint occurred in this District.

## NOTICES

6.      In 2011 and 2019, EPA issued Notices of Violation and Findings of Violation

("NOVs/FOVs") identifying alleged CAA violations at the Facilities.  EPA's NOVs/FOVs were

sent to the Defendants and the States of Indiana and Ohio.

7.      As Co-Plaintiffs in this action, the State of Indiana and the State of Ohio have

received notice of the commencement of this action in accordance with the requirements of CAA

Section 113, 42 U.S.C. § 7413, and provided notice of the violations in accordance with the

requirements of CAA Section 304(b), 42 U.S.C. 7604(b).

## THE DEFENDANTS

8.      ArcelorMittal Burns Harbor is a Delaware limited liability company that owns

and operates the steel facility located at 250 West U.S. Highway 12, Burns Harbor, Indiana

("Burns Harbor Facility").

9.      ArcelorMittal Cleveland is a Delaware limited liability company that owns and

operates the steel facility located at 3060 Eggers Avenue, Cleveland, Ohio ("Cleveland

Facility").

10.      ArcelorMittal USA is a Delaware limited liability company that, by virtue of a

merger with ArcelorMittal Indiana Harbor LLC, owns and operates steel facilities located at

3210 Watling Street, East Chicago, Indiana ("Indiana Harbor East Facility") and 3001 Dickey

Road, East Chicago, Indiana ("Indiana Harbor West Facility").

11.      ArcelorMittal USA, ArcelorMittal Burns Harbor, and ArcelorMittal Cleveland,

are "persons" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

12.     As set forth in CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1), the CAA is designed to protect and enhance the quality of the nation's air to promote the public health and welfare and the productive capacity of its population.

13.     CAA Section 110, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the National Ambient Air Quality Standards ("NAAQS") within the state.

National Emission Standards for Hazardous Air Pollutants

14.     CAA Section 112(b)(1), 42 U.S.C. § 7412(b)(1), sets forth a list of hazardous air pollutants ("HAPs") and requires that the Administrator of EPA periodically review and revise that list.  CAA Section 112(b)(1) further requires the Administrator to, where appropriate, add to the HAPs list pollutants that present or may present a threat of adverse human health or environmental effects.

15.     Benzene, manganese, lead, and hydrochloric acid are each listed as a HAP in CAA Section 112(b)(1), 42 U.S.C. § 7412(b)(1), having been so designated by Congress.

16.     CAA Section 112(d)(1), 42 U.S.C. § 7412(d)(1), directs EPA to adopt regulations establishing standards for the emission of the HAPs listed in CAA Section 112(b).  These emission standards are known as the National Emission Standards for Hazardous Air Pollutants or NESHAPs.

17.     To the extent that it is not feasible to prescribe or enforce an emission standard for control of a HAP, CAA Section 112(h), 42 U.S.C. § 7412(h), authorizes the Administrator to

promulgate "design, equipment, work practice, or operational" standards, which are to be treated as emission standards.

*The NESHAP General Provisions*

18.    The NESHAP at 40 C.F.R. Part 63, Subpart A, sets forth general provisions that are applicable to all Part 63 NESHAP sources (the "General Provisions").

19.    The General Provisions define "affected source" as any "collection of equipment, activities, or both within a single contiguous area and under common control" that is regulated by a relevant standard or requirement established pursuant to CAA Section 112. See 40 C.F.R. § 63.2.

20.    The General Provisions define "existing source" as "any source that is not a new source." See 40 C.F.R. § 63.2.

21.    The General Provisions define "stationary source" as "any building, structure, facility, or installation which emits or may emit any air pollutant." See 40 C.F.R. § 63.2.

22.    The General Provisions define "major source" as any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year ("tpy") or more of any HAP or 25 tpy or more of any combination of HAPs. See 40 C.F.R. § 63.2.

23.    The General Provisions define "owner or operator" as "any person who owns, leases, operates, controls or supervises a stationary source." See 40 C.F.R. § 63.2.

– 5 –

*Iron and Steel NESHAP*

24.    The HAPs emitted from integrated iron and steel manufacturing facilities, include

metals (primarily manganese and lead, with small quantities of other metals) and trace amounts

of organic HAPs such as benzene.

25.    In 2001, the Administrator proposed a NESHAP for integrated iron and steel

manufacturing facilities, which is codified at 40 C.F.R. Part 63, Subpart FFFFF ("Iron and Steel

NESHAP").  The Iron and Steel NESHAP was adopted by EPA on May 20, 2003, 68 Fed. Reg.

27645, and was subsequently amended on July 13, 2006.  <u>See</u> 71 Fed. Reg. 39579.  The Iron and

Steel NESHAP includes requirements related to compliance dates, emission standards,

operational standards, performance testing, monitoring, and reporting and recordkeeping.

26.    The Iron and Steel NESHAP is applicable to integrated iron and steel

manufacturing facilities that are (or are part of) a major source of HAP emissions.  <u>See</u> 40 C.F.R.

§ 63.7781.

27.    The Iron and Steel NESHAP is applicable to "each new and existing affected

source" at an integrated iron and steel manufacturing facility that is a major source of HAPs.

<u>See</u> 40 C.F.R. § 63.7782.

28.    The Iron and Steel NESHAP defines "affected sources" as each sinter plant, blast

furnace and basic oxygen furnace shop ("BOF") and covers emissions from the sinter plant

windbox exhaust, discharge end, and sinter cooler; the blast furnace casthouse; and the BOF

shop including each individual BOF and ancillary shop operations (hot metal transfer, hot metal

desulfurization, slag skimming, and ladle metallurgy).  <u>See</u> 40 C.F.R. § 63.7782(b) and (c).

29.     Under the Iron and Steel NESHAP, the sinter plant, blast furnace, and BOF shop are existing sources if their construction or reconstruction commenced before July 13, 2001. See 40 C.F.R. § 63.7782(d).

30.     Under the Iron and Steel NESHAP, if there is an existing affected source at a facility, the owner or operator must comply with the requirements of the subpart no later than May 22, 2006.  See 40 C.F.R. § 63.7783.

*Steel Pickling NESHAP*

31.     In 1999, the Administrator proposed NESHAP regulations for hydrochloric acid ("HCl acid") regeneration facilities, which are codified at 40 C.F.R. Part 63, Subpart CCC ("Steel Pickling NESHAP").  The Steel Pickling NESHAP was adopted by EPA on June 22, 1999.  See 64 Fed. Reg. 33218 (June 22, 1999).  The Steel Pickling NESHAP regulations include provisions relating to emission standards, compliance dates, operational standards, performance testing, and monitoring, reporting and recordkeeping requirements.

32.     The Steel Pickling NESHAP is applicable to "all new and existing steel pickling facilities that pickle carbon steel using HCl acid solution that contains 6 percent or more by weight [HCl acid] and is at a temperature of 100º F or higher."  See 40 C.F.R. § 63.1155(a)(1).

33.     The Steel Pickling NESHAP defines "carbon steel" as "steel that contains approximately 2 percent or less carbon, 1.65 percent or less manganese, 0.6 percent or less silicon, and 0.6 percent or less copper."  See 40 C.F.R. § 63.1156.

34.     The Steel Pickling NESHAP defines "steel pickling" as the "chemical removal of iron oxide mill scale that is formed on steel surfaces during hot rolling or hot forming of semi-finished steel products through contact with an aqueous solution of acid where such contact

– 7 –

occurs prior to shaping or coating of the finished steel product. This definition does not include removal of light rust or scale from finished steel products or activation of the metal surface prior to plating or coating." See 40 C.F.R. § 63.1156.

35.     The Steel Pickling NESHAP defines "steel pickling facility" as any facility that operates one or more batch or continuous steel pickling lines. See 40 C.F.R. § 63.1156.

36.     The Steel Pickling NESHAP defines a "continuous pickling line" as the collection of equipment and tanks configured for pickling metal strip, rod, wire, tube, or pipe that is passed through an acid solution in a continuous or nearly continuous manner and rinsed in another tank or series of tanks to remove residual acid. See 40 C.F.R. § 63.1156.

*Coke Ovens: Pushing, Quenching, and Battery Stacks NESHAP*

37.     In 2001, the Administrator proposed a NESHAP for pushing, soaking, quenching and battery stacks at coke oven batteries, which is codified at 40 C.F.R. Part 63, Subpart CCCCC ("Coke Ovens PQBS NESHAP"). The Coke Ovens PQBS NESHAP was adopted by EPA on April 14, 2003. See 68 Fed. Reg. 18007. The Coke Ovens PQBS NESHAP includes requirements related to compliance dates, emission standards, operational standards, performance testing, monitoring, and reporting and recordkeeping related to pushing, soaking, and quenching operations at the ovens, and emissions from coke oven battery stacks.

38.     The Coke Ovens PQBS NESHAP is applicable to each "new or existing affected source" at a coke plant and "each coke oven battery" is an "affected source." See 40 C.F.R. § 63.7282(a).

39.     The Coke Ovens PQBS NESHAP defines "by-product coke oven battery" as "a group of ovens connected by common walls, where coal undergoes destructive distillation under

– 8 –

positive pressure to produce coke and coke oven gas from which by-products are recovered."
See 40 C.F.R. § 63.7352.

*Coke Oven Batteries NESHAP*

40.      In 1993, the Administrator proposed a NESHAP for existing by-product coke oven batteries at a coke plant, which is codified at 40 C.F.R. Part 63, Subpart L ("Coke Oven Batteries NESHAP").  The Coke Oven Batteries NESHAP was adopted by EPA on October 27, 1993, 57 Fed. Reg. 57898, and subsequently amended on April 15, 2005.  See 70 Fed. Reg. 19992.  The Coke Oven Batteries NESHAP includes requirements related to compliance dates, emission standards, operational standards, performance testing, monitoring, and reporting and recordkeeping.

41.      The Coke Oven Batteries NESHAP applies to existing by-product coke oven batteries at a coke plant.  See 40 C.F.R. § 63.300.

42.      The Coke Oven Batteries NESHAP defines "by-product coke oven battery" as "a group of ovens connected by common walls, where coal undergoes destructive distillation under positive pressure to produce coke and coke oven gas from which by-products are recovered." See 40 C.F.R. § 63.301.

*Lime Manufacturing NESHAP*

43.      In 2002, the Administrator proposed a NESHAP for lime manufacturing sources, which is codified at 40 C.F.R. Part 63, Subpart AAAAA ("Lime Manufacturing NESHAP"). The Lime Manufacturing NESHAP was adopted by EPA on January 5, 2004, 69 Fed. Reg. 394. The Lime Manufacturing NESHAP includes requirements related to compliance dates, emission

standards, operational standards, performance testing, monitoring, and reporting and recordkeeping.

44.    The Lime Manufacturing NESHAP applies to each existing lime kiln and their associated coolers located at a lime manufacturing plant that is a major source, or that is located at, or is part of, a major source of HAPs.

New Source Performance Standards

45.    CAA Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), requires EPA to publish and periodically revise a list of categories of stationary sources, including those categories that in EPA's judgment cause or contribute significantly to air pollution which may reasonably be anticipated to endanger public health or welfare.

46.    Once a category is included on the list, CAA Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), requires that EPA promulgate a federal standard of performance for new sources within the category, also known as New Source Performance Standards ("NSPS").

47.    CAA Section 111(a)(2), 42 U.S.C. § 7411(a)(2), defines "new source" as stationary sources, the construction or modification of which is commenced after the publication of the NSPS regulations or proposed NSPS regulations applicable to such source.

48.    CAA Section 111(a)(3), 42 U.S.C. § 7411(a)(3), defines "stationary source" as a building, structure, facility or installation which emits or may emit any air pollutant.

49.    CAA Section 111(a)(4), 42 U.S.C. § 7411(a)(4), defines "modification" as any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted into the atmosphere by that facility or which results in the emission into the atmosphere of any air pollutant not previously emitted.

50.     CAA Section 111(e), 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violation of a NSPS after the effective date of the NSPS applicable to such source.

*The NSPS Subpart A General Requirements*

51.     The NSPS provisions at 40 C.F.R. Part 60, Part A, contain general provisions applicable to all NSPS sources (the "NSPS General Provisions").

52.     The NSPS General Provisions state that the provisions of 40 C.F.R. Part 60 apply to the owner or operator of any stationary source which contains an affected facility, the construction or modification of which is commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility.  See 40 C.F.R. § 60.1.

53.     The NSPS General Provisions define "owner or operator" as any person who owns, leases, operates, controls, or supervises an affected facility or a stationary source of which an affected facility is a part.  See 40 C.F.R. § 60.2.

54.     The NSPS General Provisions define "affected facility" as any apparatus to which a standard is applicable.  See 40 C.F.R. § 60.2.

55.     The NSPS General Provisions define "stationary source" as a building, structure, facility or installation which emits or may emit any air pollutant.  See 40 C.F.R. § 60.2.

56.     The NSPS General Provisions define "existing facility" as "any apparatus of the type for which a standard is promulgated in this part, and the construction or modification of which was commenced before the date of proposal of that standard . . . ."  See 40 C.F.R. § 60.2.

57. The NSPS General Provisions define "modification" as any physical change in, or change in the method of operation of, an existing facility which increases the amount of any air pollutant (to which a standard applies) emitted into the atmosphere by that facility or which results in the emission into the atmosphere of any air pollutant (to which a standard applies) not previously emitted. See 40 C.F.R. §§ 60.2 and 60.14(a).

58. The NSPS General Provisions provide that upon modification an "existing facility" becomes an "affected facility," for which the applicable NSPS must be satisfied. See 40 C.F.R. § 60.14.

59. The NSPS General Provisions require that any owner or operator of an affected facility subject to a NSPS must furnish written notification to EPA of any physical or operational change to an existing facility which may increase the emission rate of any air pollutant to which a standard applies, postmarked 60 days or as soon as practicable before the change is commenced, with information describing the precise nature of the change, present and proposed emission control systems, productive capacity of the facility before and after the change, and the expected completion date of the change. See 40 C.F.R. § 60.7(a)(4).

60. The NSPS General Provisions require that the owner or operator of an affected facility must conduct a performance test within 60 days after achieving the maximum production rate at which the affected facility will be operated, but not later than 180 days after initial startup of such facility, and furnish EPA a written report of the results of such performance test. See 40 C.F.R. § 60.8.

*The NSPS Subpart AAa Requirements*

61.　　In 1984, EPA promulgated a NSPS for electric arc furnaces at steel facilities. See 48 Fed Reg. 43845 (Oct. 31, 1984). These standards are codified at 40 C.F.R. Part 60, Subpart AAa ("NSPS Subpart AAa").

62.　　NSPS Subpart AAa is applicable to various affected facilities in steel facilities, including electric arc furnaces for which construction, modification or reconstruction commenced after August 17, 1983. See 40 C.F.R. § 60.270(a).

63.　　NSPS Subpart AAa defines "electric arc furnace" as a "furnace that produces molten steel and heats the charge materials with electric arcs from carbon electrodes. . . . [A]n [electric arc furnace] shall consist of the furnace shell and roof and the transformer." See 40 C.F.R. § 60.271(a).

Title V Permit Program

64.　　CAA Title V, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain major sources of air emissions. Pursuant to CAA Section 502(b), 42 U.S.C. § 7661a(b), on July 21, 1992, EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a permit program to be administered by any state or local air pollution control agency. See 57 Fed. Reg. 32250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70, and are referred to herein as the "Title V regulations."

65.　　The Title V regulations define "major source" at CAA Section 501, 42 U.S.C. § 7661(2), and 40 C.F.R. § 70.2, as, among other things, any stationary source which directly emits or has the potential to emit 100 tons or more per year of any regulated air pollutant.

– 13 –

66.    Under Title V, CAA Section 502(a), 42 U.S.C. § 7661a(a), it is unlawful for any person to violate any requirement of a permit issued under Title V or to operate a "major source" except in compliance with a permit issued by a permitting authority under Title V.

67.    Title V, CAA Section 504(a), 42 U.S.C. § 7661c(a), and 40 C.F.R. § 70.6(a), require that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with "applicable requirements" of the Act and the requirements of the relevant SIP.

68.    The Title V regulations define "applicable requirement" as including any relevant NESHAP and NSPS requirements.  See 40 C.F.R. § 70.2.

69.    The Title V regulations require any applicant, who fails to submit any relevant facts or who has submitted incorrect information in a permit application, to promptly submit such supplementary facts or corrected information upon becoming aware of such failure or incorrect submission.  See 40 C.F.R. § 70.5(b).

70.    All the states and regional air authorities at issue in this matter have fully approved Title V programs that are in accordance with the Federal Title V regulations.

71.    IDEM issued Title V Permit No. 127-6301-00001 for the Burns Harbor Facility on December 27, 2007.  The Burns Harbor Facility has subsequently operated under various Minor Permit Modifications, Administrative Amendments, and Significant and Minor Source Modifications to its Title V Permit.

72.    IDEM issued Title V Permit No. 089-34612-00316 for the Indiana Harbor East Facility on June 26, 2014.  The Indiana Harbor East Facility has subsequently operated under

various Minor Permit Modifications, Administrative Amendments, and Significant and Minor Source Modifications to its Title V Permit.

73.    IDEM issued Title V Permit No. T089-7099-00318 for the Indiana Harbor West Facility on December 7, 2004.  The Indiana Harbor West Facility has subsequently operated under various Minor Permit Modifications, Administrative Amendments, and Significant and Minor Source Modifications to its Title V Permit.

74.    The Ohio EPA issued Title V Permit No. 13-18-00-1613 for the Cleveland Facility on November 5, 2004.

75.    The above-referenced versions of ArcelorMittal's Title V permits are referred to in this Complaint as the "Title V Permit."

State Implementation Plans

76.    CAA Section 110, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

77.    Any violation of a permit condition issued pursuant to an approved SIP is a violation of the SIP and CAA Section 110, 42 U.S.C. § 7410.

78.    As provided at 40 C.F.R. § 52.23, it is unlawful for any person to fail to comply with any approved provision of a SIP or a federally enforceable permit.

*Indiana State Implementation Plan*

79.    Pursuant to CAA Section 110, 42 U.S.C. § 7410, sections of the Indiana Administrative Code ("IAC") have been approved by EPA at 40 C.F.R. § 52.769, and are referred to as the Indiana SIP.

80.     Section 326 IAC 2-7 was approved as part of the Indiana SIP, effective

December 14, 1995, 60 Fed. Reg. 57188, and governs Indiana's Title V permit program.

*Ohio State Implementation Plan*

81.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, sections of the Ohio

Administrative Code ("OAC") have been approved by EPA at 40 C.F.R. § 52.1870, and are

referred to as the Ohio SIP.

82.     OAC § 3745-77 was approved as part of the Ohio SIP effective October 1, 1995,

60 Fed. Reg. 42045, and governs Ohio's Title V permit program.

<u>Enforcement Provisions</u>

83.     CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), provides that:

> [w]henever, on the basis of any information available to the Administrator, the
> Administrator finds that any person has violated or is in violation of any
> requirement or prohibition of an applicable implementation plan or permit, the
> Administrator shall notify the person and the State in which the plan applies of
> such finding.  At any time after the expiration of 30 days following the date on
> which such notice of a violation is issued, the Administrator may . . .

> \*        \*        \*

>      (C) bring a civil action in accordance with subsection (b) of this section.

84.     CAA Section 113(a)(3), 42 U.S.C. § 7413(a)(3), provides that "[e]xcept for a

requirement or prohibition enforceable under the preceding provisions of this subsection,

whenever, on the basis of any information available to the Administrator, the Administrator finds

that any person has violated, or is in violation of, any other requirement or prohibition of this

subchapter . . . the Administrator may . . . bring a civil action in accordance with subsection (b)

of this section . . . ."

– 16 –

85.     CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for civil penalties against any person whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan, and other requirements of the Act.

86.     CAA Section 304(a)(1), 42 U.S.C. § 7604(a)(1), authorizes the States of Indiana and Ohio to commence a civil action against any person who is alleged to have violated an emission standard or limitation under the Act.

87.     Pursuant to Indiana Code §§ 13-13-5-1 and 13-13-5-2, Indiana may seek injunctive relief and civil penalties for the violations alleged herein.  In addition, pursuant to Indiana Code § 13-30-4-1, IDEM may recover a civil penalty not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

88.     Pursuant to Ohio Revised Code §§ 3704.05 and 3704.06, Ohio may seek injunctive relief and civil penalties for the violations alleged herein.  Pursuant to Ohio Revised Code § 3704.06, Ohio may recover a civil penalty not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

## GENERAL ALLEGATIONS

89.     At all times relevant to this Complaint, Defendants, or their predecessors, owned and operated the following steel manufacturing facilities:  the Burns Harbor Facility; the Indiana Harbor East Facility; the Indiana Harbor West Facility; and the Cleveland Facility (collectively "Facilities" or individually "Facility").

90.     The Facilities contain numerous processes and operations that are necessary to make steel, including sinter plants, granulated coal injection, coke ovens, BOF shops, blast furnaces, casthouses, hot metal desulfurization stations, ladle metallurgical facilities, and slag pits.  These processes or operations are sources of air emissions.

91.     At all times relevant to this Complaint, there were emissions of particulate matter ("PM"), $PM_{10}$, sulfur dioxide ("$SO_2$"), nitrogen oxides ("$NO_x$"), carbon monoxide ("CO"), and volatile organic compounds ("VOCs") from the Facilities.

92.     EPA has conducted investigations of all the Facilities, including site inspections, review of permitting history and emissions data, and analysis of other relevant information obtained from Defendants concerning construction and operation of the Facilities.

93.     As a facility that emits or may emit an air pollutant, each Facility is a "stationary source," as defined at CAA Section 111(a)(6), 42 U.S.C. § 7411(a)(3), and 40 C.F.R. § 60.2.

94.     Each Facility is an integrated iron and steel manufacturing facility, as defined at 40 C.F.R. § 63.7852.

95.     Each Facility emits or has the potential to emit considering controls, in the aggregate, 10 tpy or more of any single HAP or 25 tpy of any combination of HAPs.  Each Facility is a "major source" as defined at CAA Section 112(a)(1), 42 U.S.C. § 7412(a)(1), and 40 C.F.R. §§ 63.2 and 63.7781, and is subject to Title V.

96.     As an integrated iron and steel manufacturing facility that is a major source, each Facility is subject to the Iron and Steel NESHAP at 40 C.F.R. Part 63, Subpart FFFFF.  See 40 C.F.R. § 63.7781.

– 18 –

*The Burns Harbor Facility*

97.     At the Burns Harbor Facility there is a carbon steel pickling facility with two continuous pickling lines.  The carbon steel pickling facility consists of conveyers and tanks that pickle carbon steel using HCl acid solution that contains 6% or more by weight HCl acid and is at a temperature of 100° F or higher.  This process, known as "pickling," prepares, or cleans, the steel for coating or additional treatment before it is delivered to customers.

98.     Continuous pickling lines that are parts of facilities that are major sources of HAP are subject to the Steel Pickling NESHAP at 40 C.F.R. Part 63, Subpart CCC.  See 40 C.F.R. § 63.1155.

99.     The Burns Harbor Facility produces coke from coal in a by-product coke oven battery.  The by-product coke oven battery is a group of ovens connected by common walls, where coal undergoes destructive distillation under positive pressure to produce coke and coke oven gas from which by-products are recovered.

100.     The coke oven battery at the Burns Harbor Facility is a "by-product coke oven battery" under the Coke Ovens PQBS NESHAP.  See 40 C.F.R. § 63.7352.

101.     Coke oven batteries that are parts of facilities that are major sources of HAP are subject to the Coke Ovens PQBS NESHAP at 40 C.F.R. Part 63, Subpart CCCCC.  See 40 C.F.R. § 63.7281.

102.     Coke Oven Battery No. 1 at the Burns Harbor Facility is an existing by-product coke oven battery under the Coke Oven Batteries NESHAP.  See 40 C.F.R. § 63.301.

103.     Existing by-product coke oven batteries are subject to the Coke Oven Batteries NESHAP at 40 C.F.R. Part 63, Subpart L.  See 40 C.F.R. § 63.300.

104.    EPA inspected the Burns Harbor Facility on July 14, 2006, July 28, 2006, July 31, 2006, August 9, 2006, August 22, 2006, December 6, 2006, and June 1, 2007.

105.    EPA sent Information Requests pursuant to CAA Section 114, 42 U.S.C. § 7414, regarding operations at the Burns Harbor Facility on November 1, 2006, December 10, 2006, July 10, 2007, February 11, 2008, February 26, 2009, and April 13, 2010.

106.    ArcelorMittal responded to EPA's Information Requests on December 19, 2006, March 6 and 16, 2006, May 17, 2006, September 21, 2007, April 18, 2008, April 2, 2009, May 4 and 7, 2009, July 1, 2009, August 7, 2009, and May 28, 2010.

*The Indiana Harbor Works Complex*

107.    ArcelorMittal USA owns and operates two facilities, Indiana Harbor East and Indiana Harbor West, which comprise the Indiana Harbor Works complex. The Indiana Harbor Works complex is the largest steel-making complex in North America and is a fully integrated steelmaker. The two facilities have a total raw steelmaking capability of 10 million tons annually. The two facilities were previously owned by different ArcelorMittal entities and are permitted separately.

*The Indiana Harbor East Facility*

108.    The processes at which the United States has identified violations of the CAA at the Indiana Harbor East Facility include the casthouses, the BOF shop, the material transfer operations, the slag pit, and the electric arc furnace.

109.    The Indiana Harbor East Facility is an iron and steel mill Facility which emits or has the potential to emit 100 tpy or more of any regulated air pollutant. The Indiana Harbor East

Facility emits or has the potential to emit considering controls, in the aggregate, 10 tpy or more of any HAP or 25 tpy of any combination of HAPs.

110.    The Indiana Harbor East Facility is a major source and is subject to Title V.  Iron and steel manufacturing facilities, including blast furnaces and BOF shop, constitute "material processing facilities" under the Indiana SIP.  Material processing equipment includes the initial crusher, screen, grinder, mixer, dryer, belt conveyor, bucket elevator, bagging operation, storage bin, and truck or railroad car loading station.  See Section 326 IAC 6.8-10-2(12).

111.    The No. 7 Blast Furnace dust catcher dump at the Indiana Harbor East Facility is material processing equipment surrounded by a makeshift partial enclosure.

112.    EPA inspected the Indiana Harbor East Facility on February 22, 2006 and March 26, 2007.

113.    EPA sent Information Requests pursuant to CAA Section 114, 42 U.S.C. § 7414, regarding operations at the Indiana Harbor East Facility on June 12, 2007 and September 12, 2007.

114.    ArcelorMittal responded to EPA's Information Request on August 14, 2007 and October 19, 2007.

*The Indiana Harbor West Facility*

115.    The processes at which the United States has identified violations of the CAA at the Indiana Harbor West Facility include the blast furnaces, the BOF shop, the sinter facility, the gasoline dispensing facility, and the ladle metallurgical facility.

116.    The Indiana Harbor West Facility is an iron and steel mill which emits or has the potential to emit 100 tpy or more of any regulated air pollutant.  The Indiana Harbor West

– 21 –

Facility emits or has the potential to emit considering controls, in the aggregate, 10 tpy or more

of any HAP or 25 tpy of any combination of HAPs.

117.    The Indiana Harbor West Facility is a major source and is subject to Title V.

118.    The Indiana Harbor West Facility has one sinter facility where coal and metal

fines from the coke oven are sintered together so that they are a suitable size for charging in the

blast furnace.  Emissions from the sinter facility are controlled by a scrubber.  The sinter facility

was idled on November 20, 2008 and remains idled.

119.    At the Indiana Harbor West Facility there are two blast furnaces designated

Nos. 3 and 4.  Blast Furnaces Nos. 3 and 4 are used to produce molten iron from iron ore and

other iron bearing materials.  Emissions from the blast furnaces are controlled by a baghouse,

primary and secondary scrubbers, and a flare.

120.    The No. 3 Blast Furnace was idled from October 15, 2008 through April 1, 2011.

121.    There are two vessels in the Indiana Harbor West Facility BOF shop designated

as vessels Nos. 1 and 2.  Emissions from both vessels are controlled by a primary hood and an

electrostatic precipitator.

122.    At the Indiana Harbor West Facility BOF shop, hot metal desulfurization is

performed at two stations.  Two hot metal transfer stations sit adjacent to the desulfurization

stations.  Emissions from all four stations and from two slag skimming stations are controlled by

a single baghouse.

123.    EPA inspected the Indiana Harbor West Facility on September 28, 2006,

November 29, 2006, and December 13, 2006.

124.    EPA sent an Information Request pursuant to Section 114 of the Act, 42 U.S.C. § 7414, regarding operations at the Indiana Harbor West Facility on January 22, 2007.

125.    ArcelorMittal responded to EPA's Information Request on March 13, 2007 and August 14, 2007.

### The Cleveland Facility

126.    The Cleveland Facility is one of ArcelorMittal's largest facilities in the United States.  The Cleveland Facility can produce 4.6 million tons of raw steel annually.

127.    The processes at which the United States has identified violations of the CAA at the Cleveland Facility include the blast furnaces, casthouse, BOF shop, boilers, and the slag pits.

128.    At the Cleveland Facility, there are two blast furnaces, designated C5 and C6, which produced an estimated 2.7 million tons of iron in 2006.  Emissions from the C5 and C6 Blast Furnaces are controlled with a passive emission suppression system which consists of covers and flame suppression.

129.    Emissions from the BOF shop are controlled by a wet scrubbing system with baghouses for control of emissions and a continuous opacity monitor on the baghouse stack.

130.    EPA inspected the Cleveland Facility on August 30, 2007 and October 22, 2007.

131.    EPA sent an Information Request pursuant to CAA Section 114, 42 U.S.C. § 7414, regarding operations at the Cleveland Facility on May 17, 2007.

132.    ArcelorMittal Cleveland responded to the Information Request with submissions dated June 22, 2007 and July 20, 2007.

133.    The United States and the States of Indiana and Ohio allege the following based on the results of EPA's investigation, and information and belief:

FIRST CLAIM FOR RELIEF
Burns Harbor Facility - C and D Blast Furnaces
(Iron and Steel NESHAP, Title V, and Indiana SIP)

134.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

135.    The Burns Harbor Facility includes two blast furnaces designated as the C Blast Furnace and the D Blast Furnace.  The C Blast Furnace and the D Blast Furnace are used to produce molten iron from iron ore and other iron bearing materials.

136.    The C Blast Furnace and the D Blast Furnace are each an existing "affected source" under the Iron and Steel NESHAP.  See 40 C.F.R. § 63.7782(b).

137.    The Burns Harbor Facility includes two casthouses, buildings or structures that enclose the bottom portion of a blast furnace where the hot metal and slag are tapped from the furnace.

138.    The Iron and Steel NESHAP covers emissions from, among other areas, a blast furnace casthouse.  See 40 C.F.R. § 63.7782(c).

139.    The Iron and Steel NESHAP requires continuous compliance with each emission limit and opacity limit in Table 1 of Subpart FFFFF applicable to the affected source.  See 40 C.F.R. §§ 63.7790(a), Table 1 and 63.7834, Table 3.

140.    The Iron and Steel NESHAP prohibits the discharge of secondary emissions exiting any opening in the casthouse that exhibit opacity greater than 20% (6-minute average). See 40 C.F.R. §§ 63.7790(a), Table 1(7)(b) and 63.7833(a), Table 3(7)(b).

141.    ArcelorMittal Burns Harbor reported exceedances of the 20% opacity (6-minute average) limit at the C Blast Furnace casthouse for eight 6-minute averaging periods in 2007 and one 6-minute averaging period in 2017.

142.    ArcelorMittal Burns Harbor reported exceedances of the 20% opacity (6-minute average) limit at the D Blast Furnace casthouse for two 6-minute averaging periods in 2007 and one 6-minute averaging period in 2011.

143.    Section 326 IAC 5-1-2(1)(A), part of the Indiana SIP, requires that visible emissions from a source not exceed 40% opacity (6-minute average).

144.    Opacity readings conducted by an EPA inspector on July 31, 2006 and opacity readings conducted by ArcelorMittal showed exceedances of the 40% opacity (6-minute average) limit at the C Blast Furnace relief valves and back draft for one 6-minute averaging period in 2006 and three 6-minute averaging periods in 2009.

145.    ArcelorMittal Burns Harbor's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Burns Harbor Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

146.    Unless restrained by an order of this Court, the violations of the CAA alleged in this First Claim for Relief will continue.

147.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation

– 25 –

occurring on or after November 3, 2015. Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

SECOND CLAIM FOR RELIEF
Burns Harbor Facility - Steel Pickling Line
(Steel Pickling NESHAP, Title V, and Indiana SIP)

148.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

149.    The Burns Harbor Facility's two continuous steel pickling lines are existing "affected sources" under the Steel Pickling NESHAP, Part 63, Subpart CCC. See 40 C.F.R. § 63.1155(b).

150.    The Steel Pickling NESHAP requires that HCl emissions from an existing pickling line be less than 18 ppm or have a 97% collection efficiency. See 40 C.F.R. § 63.1157(a).

151.    ArcelorMittal Burns Harbor reported HCl emissions in excess of 18 ppm or less than 97% collection efficiency on July 21-August 12, August 15-September 12, and September 17, 2008.

152.    ArcelorMittal Burns Harbor's failure to comply with the requirements of the Steel Pickling NESHAP at its Burns Harbor Facility is a violation of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart CCC; Sections 110 and 502 of the Act, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

– 26 –

153.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Second Claim for Relief will continue.

154.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

THIRD CLAIM FOR RELIEF
Burns Harbor Facility - Basic Oxygen Furnace Shop
(Iron and Steel NESHAP, Title V, and Indiana SIP)

155.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

156.    The BOF shop at the Burns Harbor Facility has three vessels.  Two of the vessels were installed in or around 1968 and the emissions from these two vessels are controlled by a primary hood.  The third vessel was installed around 1978, and uses a suppressed hood, flare, and a secondary hood to capture charge emissions.

157.    The BOF shop is an "affected source" under the Iron and Steel NESHAP.  See 40 C.F.R. § 63.7782.

158.    The Iron and Steel NESHAP requires continuous compliance with each emission limit and opacity limit set forth in Table 1 of Subpart FFFFF applicable to the affected source. See 40 C.F.R. §§ 63.7790(a), Table 1 and 63.7833(a), Table 3.

159.    The Iron and Steel NESHAP prohibits discharge of secondary emissions from any opening in the BOF shop or other building housing the BOF or BOF shop operation that exhibits opacity greater than 20% (3-minute average).  See 40 C.F.R. §§ 63.7790(a), Table 1(13)(b) and 63.7833(a), Table 3(12)(a).

160.    ArcelorMittal Burns Harbor reported exceedances of the 20% (3-minute average) limit at the BOF roof monitor for three 3-minute averaging periods in 2012.

161.    ArcelorMittal Burns Harbor's construction permit PC64716, dated July 11, 1974, states that "some type of auxiliary hoods will be installed for tapping and charging."  Auxiliary hoods are used to control emissions of PM from the BOF shop.

162.    On or before April 15, 2006, ArcelorMittal Burns Harbor took the charging hood for the BOF shop No. 3 vessel permanently out of service, leaving the Burns Harbor Facility without an auxiliary hood during charging.

163.    ArcelorMittal Burns Harbor's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor West Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; Sections 110 and 502 of the Act, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

164.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Third Claim for Relief will continue.

– 28 –

165.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

FOURTH CLAIM FOR RELIEF<br>
Burns Harbor Facility - Coke Oven Battery<br>
(Coke Ovens: Pushing, Quenching, and Battery Stacks NESHAP,<br>
Coke Oven Batteries NESHAP, Title V, and Indiana SIP)

166.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

167.    The coke oven battery at the Burns Harbor Facility is an "affected source" under the Coke Ovens PQBS NESHAP.  See  40 C.F.R. § 63.7282.

168.    The Coke Ovens PQBS NESHAP prohibits emissions from any battery stack at a by-product coke oven battery that exhibit an opacity greater than a daily average of 15% for a battery on a normal coking cycle.  See 40 C.F.R. § 63.7296(a).

169.    ArcelorMittal Burns Harbor reported deviations of the daily 15% opacity average operating limit (normal coking time) on one day in 2011, three days in 2014, two days in 2015, and one day in 2016.

170.    Section 326 IAC 5-1-2(1)(A), part of the Indiana SIP, prohibits visible emissions from a source or facility exceeding 40% opacity (6-minute average).

171.    ArcelorMittal Burns Harbor reported exceedances of the 40% opacity (6-minute average) limit at the Coke Oven Battery No. 1 underfire stack for eight 6-minute averaging periods in 2008; nine 6-minute averaging periods in 2009; nine 6-minute averaging periods in 2011; eight 6-minute averaging periods in 2012; ten 6-minute averaging periods in 2013; 129 6-minute averaging periods in 2014; 17 6-minute averaging periods in 2015; 28 6-minute averaging periods in 2016; eight 6-minute averaging periods in 2017; and seven 6-minute averaging periods in 2018.

172.    Section 326 IAC 11-3-2(b)(4), part of the Indiana SIP, requires that visible emissions from a charging system not be visible for more than a cumulative total of 125 seconds during five consecutive charging periods.

173.    The ArcelorMittal Burns Harbor Facility Title V Permit requires that visible emissions must not be present for more than 125 seconds during five consecutive charges.

174.    On August 30, 2006 and July 18, 2007, IDEM inspectors observed that emissions from Coke Oven Battery No. 1 were present for more than 125 seconds during five consecutive charges.

175.    ArcelorMittal Burns Harbor reported that emissions at the coke oven battery were visible for more than 125 seconds during five continuous charges for one event in 2006, 2007, 2008, and 2012; for three events in 2013; and for one event in 2016 at Coke Oven Battery No. 1; and for two events in 2013 at Coke Oven Battery No. 2.

176.    The ArcelorMittal Burns Harbor Title V Permit requires that, pursuant to 326 IAC 11-3-2(d)(4), no visible emission be permitted from more than 10% of the total offtake piping at a facility.

177.    ArcelorMittal Burns Harbor reported visible emissions of more than 10% of the offtake piping for one event in 2009, 2010, and 2014; two events in 2011 and 2012; and three events in 2013 and 2017 at Coke Oven Battery No. 1; and one event in 2012 at Coke Oven Battery No. 2.

178.    The ArcelorMittal Burns Harbor Title V Permit requires that, pursuant to 326 IAC 11-3-2(f)(4), no visible emission be permitted from more than 10% of the total coke oven doors on any coke oven battery.

179.    ArcelorMittal Burns Harbor reported visible emissions from more than 10% of the total coke oven doors for seven events in 2010; one event in 2011, 2012, 2014 and 2015; and two events in 2013 at Coke Oven Battery No. 1; and one event in 2012 at Coke Oven Battery No. 2.

180.    The Coke Oven Batteries NESHAP at 40 C.F.R. § 63.304(b)(2)(iii) prohibits ArcelorMittal Burns Harbor from discharging or allowing discharges of emissions from a by-product coke oven battery in excess of 2.5% leaking offtake systems, as determined by the procedures in 40 C.F.R. § 63.309(d)(1) (including 30-day rolling average of Method 303 emissions value).

181.    ArcelorMittal Burns Harbor reported an exceedance of the 30-day rolling average Method 303 visible emission standard for offtake piping during the month of February 2014, and

reported an exceedance of the leaking rate at the No. 1 Coke Oven Battery offtake piping during the month of August 2018.

182.    The Coke Oven Batteries NESHAP at 40 C.F.R. § 63.304(b)(3)(i) prohibits ArcelorMittal Burns Harbor from discharging or allowing discharges of emissions from a tall by-product coke oven battery in excess of 4.0% leaking coke oven doors, as determined by the procedures in 40 C.F.R. § 63.309(d)(1) (including 30-day rolling average of Method 303 emissions value).

183.    ArcelorMittal Burns Harbor reported an exceedance of the 30-day rolling average Method 303 visible emission standard for coke oven doors during the months of October 2010 and March 2014.

184.    ArcelorMittal Burns Harbor's failure to comply with the requirements of the Coke Ovens PQBS NESHAP, Coke Oven Battery NESHAP, the Indiana SIP, and its Title V Permit at the Burns Harbor Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subparts CCCCC and L; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

185.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Fourth Claim for Relief will continue.

186.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004

– 32 –

and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on

or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation

occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-

30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of

any violation of air pollution control laws in a civil action commenced in any court with

jurisdiction.

<u>FIFTH CLAIM FOR RELIEF</u>
Burns Harbor Facility - Sinter Plant
(Iron and Steel NESHAP, Title V, and Indiana SIP)

187.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

188.    The Burns Harbor Facility sinter plant includes a machine used to produce fused

clinker-like aggregate or sinter of fine iron-bearing materials suited for use in a blast furnace.

The machine is composed of a continuous traveling grate that conveys a bed of ore fines and

other finely divided iron-bearing material and fuel (typically coke breeze), a burner at the feed

end of the grate for ignition, and a series of downdraft windboxes along the length of the strand

to support downdraft combustion and heat sufficient to produce a fused sinter product.

189.    The sinter plant at the Burns Harbor Facility is an "affected source" under the

Iron and Steel NESHAP.  <u>See</u> 40 C.F.R. § 63.7782(b).

190.    The Iron and Steel NESHAP requires continuous compliance with each emission

limit and opacity limit in Table 1 of Subpart FFFFF applicable to the affected source.  <u>See</u> 40

C.F.R. §§ 63.7790(a), Table 1 and 63.7834, Table 3.

191.    The Iron and Steel NESHAP prohibits emissions from the sinter cooler that exhibit opacity greater than 10% (6-minute average).  See 40 C.F.R. §§ 63.7790(a), Table 1(5) and 63.7833(a), Table 3(5)(a).

192.    ArcelorMittal Burns Harbor reported exceedances of the 10% (6-minute average) opacity limit at the sinter cooler during performance testing on September 16, 2014.

193.    The Iron and Steel NESHAP requires that each sinter plant maintain a 30-day rolling average of VOC emissions from the windbox exhaust stream at or below 0.2 lbs/ton of sinter.  See 40 C.F.R. § 63.7790(d)(2).

194.    ArcelorMittal Burns Harbor reported that it failed to maintain VOC emissions from the sinter plant windbox exhaust stream at or below 0.2 lbs/ton of sinter on 25 days in 2008.

195.    The Iron and Steel NESHAP requires that each sinter plant subject to the operating limit in 40 C.F.R. § 63.7790(d) must compute and record the 30-day rolling average of the VOC emissions (lbs/ton of sinter) for each operating day, using the procedures in 40 C.F.R. § 63.7824(e).  See 40 C.F.R. § 63.7830(e)(2).

196.    ArcelorMittal Burns Harbor reported that it failed to monitor the 30-day rolling average of the daily average VOC emissions from the windbox exhaust on ten days in 2008; three days in 2010; 12 days in 2011; nine days in 2012; and three days in 2013.

197.    Section 326 IAC 5-1-2 (1)(A), part of the Indiana SIP, prohibits visible emissions from a source or facility exceeding 40% opacity (6-minute average).

198.    On August 22, 2006 and June 20, 2007, EPA and IDEM inspectors observed exceedances of the 40% opacity (6-minute average) limit at the sinter plant windbox stack.

199.     ArcelorMittal Burns Harbor's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Burns Harbor Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Section 110, 42 U.S.C. § 7410; and CAA Section 502, 42 U.S.C. § 7661a, and the implementing regulations at 40 C.F.R. Part 70.

200.     Unless restrained by an order of this Court, the violations of the CAA alleged in this Fifth Claim for Relief will continue.

201.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

SIXTH CLAIM FOR RELIEF<br>Burns Harbor Facility - Hot Dip Coating Line<br>(Title V)

202.     Paragraphs 1 through 133, are realleged and incorporated herein by reference.

203.     The Burns Harbor Facility's Title V Permit prohibits $NO_x$ emissions from the hot dip coating line in excess of 2.99 lbs/hr (0.031 lbs/MMBtu).

– 35 –

204.    ArcelorMittal Burns Harbor reported that it failed to maintain its $NO_x$ emissions below 2.99 lbs/hr on two days in 2008; four days in 2009; one day in 2012; three days in 2013; four days in 2014; and one day in 2016.

205.    The Burns Harbor Facility's Title V Permit contains operating parameters for the selective catalytic reduction/$NO_x$ control device (C672-6008) that require a minimum of 0.8 moles of ammonia per mole of $NO_x$ and that the operating temperature of the control device shall be maintained between 500° F and 900° F.

206.    The Burns Harbor Facility Title V Permit requires that $NO_x$ emissions from the hot dip coating line be monitored using a continuous emission monitor.

207.    ArcelorMittal Burns Harbor reported that it failed to maintain at least 0.8 moles of ammonia per mole of $NO_x$ or failed to maintain the operating temperature of the SCR control device between 500° F and 900° F on 64 days in 2009; 101 days in 2010; 47 days in 2011; 164 days in 2012; 179 days in 2013; and 124 days in 2014.

208.    ArcelorMittal Burns Harbor reported that on four days in 2009 and one day in 2015 it failed to measure the $NO_x$ emissions from the coating line using a continuous emission monitor.

209.    ArcelorMittal Burns Harbor's failure to comply with the requirements of its Title V Permit at the Burns Harbor Facility is a violation of CAA Section 502, 42 U.S.C. § 7661a, and the implementing regulations at 40 C.F.R. Part 70.

210.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Sixth Claim for Relief will continue.

211.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

SEVENTH CLAIM FOR RELIEF
Burns Harbor Facility - Iron Beaching
(Title V and Indiana SIP)

212.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

213.    Section 326 IAC 5-1-2(1)(A), part of the Indiana SIP, and the Burns Harbor Title V Permit prohibit visible emissions from a source in excess of 40% opacity (6-minute average).

214.    ArcelorMittal Burns Harbor reported visible emissions from the iron beaching operations in excess of 40% opacity (6-minute average) on one date in April 2009 and June 2015.

215.    Section 326 IAC 6-4-2, part of the Indiana SIP, and the Burns Harbor Facility's Title V Permit both prohibit allowing fugitive dust to escape beyond the property line or boundaries of the property, right-of-way, or easement on which the source is located.

– 37 –

216.    ArcelorMittal Burns Harbor reported that iron beaching activities caused fugitive dust to cross the property line on 31 days in 2009, 61 days in 2010, and 34 days 2011.

217.    ArcelorMittal Burns Harbor's failure to comply with the requirements of its Title V Permit and the Indiana SIP at the Burns Harbor Facility is a violation of CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a, and the implementing regulations at 40 C.F.R Part 70.

218.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Seventh Claim for Relief will continue.

219.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal Burns Harbor to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

EIGHTH CLAIM FOR RELIEF
Indiana Harbor East Facility - Electric Arc Furnace
(NSPS)

220.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

221.    The Indiana Harbor East Facility's electric arc furnace is an "existing facility," as that term is defined at CAA Section 111(a)(6), 42 U.S.C. § 7411(a)(6), and 40 C.F.R. § 60.2.

222.    In 1996, ArcelorMittal USA's predecessor, Inland, upgraded and replaced the No. 1 electric arc furnace 65 MVA transformer with a 120 MVA transformer.  The changes and upgrading of the electric arc furnace transformer reduced the average tap-to-tap time which allowed more iron to be melted and resulted in higher production rates and greater emissions of PM from the electric arc furnace.

223.    The changes to the No. 1 electric arc furnace constituted a "modification," as that term is defined at 40 C.F.R. § 60.14.

224.    Upon modification, the No. 1 electric arc furnace became an "affected facility," as that term is defined at 40 C.F.R. §§ 60.2 and 60.270a.

225.    The No. 1 electric arc furnace is subject to the requirements of the NSPS, Subpart AAa.

226.    ArcelorMittal USA failed to keep records of and notify EPA of its construction, modification, or reconstruction of the No. 1 electric arc furnace transformer as required by 40 C.F.R. § 60.7.

227.    ArcelorMittal USA failed to notify EPA of its initial start-up of the modified No. 1 electric arc furnace as required by 40 C.F.R. § 60.7.

228.    ArcelorMittal USA failed to conduct a performance test within 180 days after the modification of the No. 1 electric arc furnace and to furnish EPA with a written report of the results as required by 40 C.F.R. § 60.8.

229.    Since the modification of the No. 1 electric arc furnace, ArcelorMittal USA has operated it in such a manner that it has caused gases which exhibit 3% opacity or greater to exit from a control device in violation of 40 C.F.R. § 60.272a(a)(2).

– 39 –

230.    Since the modification of the No. 1 electric arc furnace, ArcelorMittal USA has operated it in such a manner that it has caused gases which exhibit 6% opacity or greater to exit from a shop in violation of 40 C.F.R. § 60.272a(a)(3).

231.    Since the modification of the No. 1 electric arc furnace, ArcelorMittal USA has failed to properly monitor the electric arc furnace in violation of 40 C.F.R. § 60.274a.

232.    Since the modification of the No. 1 electric arc furnace, ArcelorMittal USA has failed to perform the required record-keeping and reporting in violation of 40 C.F.R. § 60.276a.

233.    ArcelorMittal USA's failure to comply with the NSPS at the Indiana Harbor East Facility is a violation of CAA Section 111, 42 U.S.C. § 7411, and the implementing regulations at 40 C.F.R. Part 60, Subpart AAa.

234.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Eighth Claim for Relief will continue.

235.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each violation occurring on or after January 31, 1997 and up to and including March 15, 2004; $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per

day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

NINTH CLAIM FOR RELIEF

Indiana Harbor East Facility - No. 5, No. 6, and No. 7 Blast Furnaces
(Iron and Steel NESHAP, Title V, and Indiana SIP)

236.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

237.    The Indiana Harbor East Facility includes three blast furnaces designated as the Nos. 5, 6, and 7 Blast Furnaces.  The Nos. 5, 6, and 7 Blast Furnaces are used to produce molten iron from iron ore and other iron bearing materials.

238.    The Nos. 5, 6, and 7 Blast Furnaces are each an existing "affected source" under the Iron and Steel NESHAP.  See 40 C.F.R. § 63.7782(b).

239.    Each of the blast furnaces at the Indiana Harbor East Facility includes two casthouses, buildings, or structures that enclose the bottom portion of the blast furnace where the hot metal and slag are tapped from the furnace.

240.    The Iron and Steel NESHAP covers emissions from, among other areas, a blast furnace casthouse.  See 40 C.F.R. § 63.7782(c).

241.    The Iron and Steel NESHAP requires continuous compliance with each emission limit and opacity limit in Table 1 of Subpart FFFFF applicable to the affected source.  See 40 C.F.R. §§ 63.7790(a), Table 1 and 63.7834, Table 3.

242.    The Iron and Steel NESHAP prohibits the discharge of secondary emissions exiting any opening in the casthouse that exhibit opacity greater than 20% (6-minute average). See 40 C.F.R. §§ 63.7790(a), Table 1(7)(b) and 63.7833(a), Table 3(7)(b).

– 41 –

243.    Section 326 IAC 6.8-3-2, part of the Indiana SIP, and the Indiana Harbor East Title V Permit, require that PM emissions for the No. 7 Blast Furnace casthouse shall not exceed 15% opacity (6-minute average).

244.    ArcelorMittal USA reported exceedances of the 20% opacity (6-minute average) limit at the No. 5 Blast Furnace casthouse roof monitors for one 6-minute averaging period in 2006, 2007, and 2009.

245.    ArcelorMittal USA reported exceedances of the 20% opacity (6-minute average) limit at the No. 6 Blast Furnace casthouse roof monitors for three 6-minute averaging periods in 2006; two 6-minute averaging periods in 2008; and three 6-minute averaging periods in 2010.

246.    ArcelorMittal USA reported exceedances of the 20% 6-minute average federal and 15% 6-minute average state opacity limits at the No. 7 Blast Furnace casthouse roof monitor or flare stack for two 6-minute averaging periods in 2006; three 6-minute averaging periods in 2007; 165 6-minute averaging periods in 2008; seven 6-minute averaging periods in 2009; one 6-minute averaging period in 2010; two 6-minute averaging periods in 2011; 11 6-minute averaging periods in 2013; four 6-minute averaging periods in 2014; one 6 minute averaging period in 2015; four 6-minute averaging periods in 2016; and two 6-minute averaging periods in 2017.

247.    Section 326 IAC 5-1-2(2)(B), part of the Indiana SIP, and Indiana Harbor East Title V Permit require that visible emissions from the flare stack not exceed 20% opacity (6-minute average).

248.    ArcelorMittal USA reported an exceedance of the 20% 6-minute average, source-wide state opacity limit at the No. 7 Blast Furnace flare stack on May 18, 2014.

– 42 –

249.    The Indiana Harbor East Title V Permit requires that CO emissions from the No. 7 Blast Furnace stoves (stack 170) not exceed 3,968 lbs/hr based on a rolling 30-day average.

250.    ArcelorMittal USA reported that the 30-day average CO emission limit at the No. 7 Blast Furnace was exceeded from March 28, 2012 through April 21, 2012.

251.    Section 326 IAC 6.8-10-3(7)(D), part of the Indiana SIP, and the Indiana Harbor East Facility Title V Permit require 0% frequency of visible emission observations from the No. 7 Blast Furnace dust catcher dump.  Compliance is determined by 40 C.F.R. Part 60, Appendix A, Method 22.

252.    On March 25, 2007, visible emission observations conducted by a certified inspector in accordance with EPA Method 9 and Method 22, 40 C.F.R. Part 60, Appendix A, recorded opacity exceedances at the No. 7 Blast Furnace dust catcher dump.  ArcelorMittal reported additional exceedances in 2007, 2008, and 2009.

253.    ArcelorMittal USA's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor East Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

254.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Ninth Claim for Relief will continue.

255.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R.

§ 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

<u>TENTH CLAIM FOR RELIEF</u>
Indiana Harbor East Facility - No. 7 Blast Furnace
(Title V and Indiana SIP)

256.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

257.    Sections 326 IAC 7-4.1-11(a)(14)-(15), part of the Indiana SIP, and the Indiana Harbor East Facility Title V Permit require that $SO_2$ emissions from the No. 7 Blast Furnace canopy and casthouse baghouse not exceed 0.220 lbs/ton and 50.400 lbs/hour.

258.    Following EPA-directed testing in 2012 and a subsequent internal investigation, ArcelorMittal USA reported non-compliance with the 0.220 lbs/ton and 50.400 lbs/hr $SO_2$ emission limits at the No. 7 Blast Furnace canopy and casthouse baghouse.

259.    ArcelorMittal USA's failure to comply with the requirements of the Indiana SIP and its Title V Permit at the Indiana Harbor East Facility are violations of CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

– 44 –

260.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Tenth Claim for Relief will continue.

261.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

ELEVENTH CLAIM FOR RELIEF
Indiana Harbor East Facility - No. 2 and No. 4 Basic Oxygen Furnace Shops
(Iron and Steel NESHAP, Title V, and Indiana SIP)

262.    Paragraphs 1 through 133, are realleged and incorporated herein by reference.

263.    The Nos. 2 and 4 BOF shops at the Indiana Harbor East Facility are each an "affected source" under the Iron and Steel NESHAP.  See 40 C.F.R. § 63.7782.

264.    The Iron and Steel NESHAP requires compliance with each emission limit and opacity limit set forth in Table 1 of Subpart FFFFF applicable to the affected source.  See 40 C.F.R. § 63.7790(a).

265.    The Iron and Steel NESHAP prohibits discharge of PM in excess of 0.03 grains per dry standard cubic foot (gr/dscf) during the primary oxygen blow at a BOF shop.  See 40 C.F.R. §§ 63.7790(a), Table 1(9)(1) and 63.7833(a), Table 3(9)(a).

– 45 –

266.    Particulate Matter emissions from the No. 2 BOF shop's No. 20 off-gas scrubber stack exceeded 0.03 gr/dscf during stack tests in August and September 2006.

267.    Section 326 IAC 6.8-2-17, part of the Indiana SIP, and the Indiana Harbor East Facility Title V Permit prohibit emissions of total suspended particles (TSP) (PM) from the No. 2 BOF shop No. 20 off-gas scrubber in excess of 0.058 lbs/ton and 16.00 lbs/hr.

268.    In each of the stack tests conducted in August and September 2006 at the No. 2 BOF shop's No. 20 furnace off-gas scrubber, ArcelorMittal exceeded 0.058 lbs/ton and 16.00 lbs/hr TSP (PM) limits.

269.    The Iron and Steel NESHAP prohibits discharge of PM in excess of 0.01gr/dscf from a control device used solely for the collection of secondary emissions from an existing BOF shop.  See 40 C.F.R. §§ 63.7790(a), Table 1(9)(c) and 63.7833(a), Table 3(9)(c).

270.    In August, September, and November 2006, and January 2007, ArcelorMittal conducted five stack tests at the No. 2 BOF shop's secondary ventilation system scrubber stack. In each of the stack tests the PM emissions exceeded the 0.01gr/dscf limit.

271.    Section 326 IAC 6.8-2-17, part of the Indiana SIP, and the Indiana Harbor East Facility Title V Permit require that emissions from the No. 2 BOF shop's secondary ventilation system scrubber not exceed 0.015 gr/dscf TSP (PM) and 12.00 lbs/hr TSP (PM).

272.    In each of the stack tests conducted in 2006 and 2007, the TSP (PM) emissions from the No. 2 BOF shop's secondary ventilation system scrubber stack exceeded the 0.015 gr/dcsf and 12.00 lbs/hr limit.

273.    The Iron and Steel NESHAP prohibits discharge of secondary emissions from a BOF shop that exhibit opacity greater than 20% (3-minute average).  See 40 C.F.R. §§ 63.7790(a), Table 1(12)(b) and 63.7833(a), Table 3(12)(a).

274.    Section 326 IAC 6.8-2-17, part of the Indiana SIP, and the Indiana Harbor East Facility Title V Permit require that emissions from the No. 2 and No. 4 BOF shops' roof monitors each not exceed 20% opacity (3-minute average).

275.    ArcelorMittal USA reported exceedances of the 20% (3-minute average) federal and state opacity limits at the No. 2 BOF shop roof monitor for 28 3-minute averaging periods in 2006; six 3-minute averaging periods in 2007; 13 3-minute averaging periods in 2008; 12 3-minute averaging periods in 2009; 21 3-minute averaging periods in 2010; three 3-minute averaging periods in 2011; 15 3-minute averaging periods in 2012; 14 3-minute averaging periods in 2013; seven 3-minute averaging periods in 2014; 13 3-minute averaging periods in 2015; and one 3-minute averaging period in 2016.

276.    ArcelorMittal USA reported exceedances of the 20% (3-minute average) federal and state opacity limits at the No. 4 BOF shop roof monitor for two 3-minute averaging periods in 2006; one 3-minute averaging period in 2010; five 3-minute averaging periods in 2011; three 3-minute averaging periods in 2012; eight 3-minute averaging periods in 2014; and one 3-minute averaging periods in 2016.

277.    Section 326 IAC 6.8-2-17(a), part of the Indiana SIP and the Indiana Harbor East Facility Title V Permit require that emissions from the No. 2 BOF ladle metallurgical station baghouse shall not exceed 0.0052 gr/dscf TSP and 2.00 lbs/hr TSP.

278.     ArcelorMittal USA reported an exceedance of the 2.00 lbs/hr SIP limit during testing on February 25, 2011.

279.     Section 326 IAC 2-7-6(6) and the Indiana Harbor East Facility Title V Permit require that the flare for controlling CO from No. 2 BOF off-gas scrubber system shall be in operation at all times that respective furnaces are in operation.

280.     ArcelorMittal USA reported heats were completed without a lit flare on two days in 2010; one day in 2013; three days in 2014; four days in 2015; and one day in 2017.

281.     Section 326 IAC 6.8-10-3(6)(A), part of the Indiana SIP, and the Indiana Harbor East Facility Title V Permit require a 0% frequency of visible emission observations of a material during the in-plant transportation of material by truck or rail at any time.  Compliance with this standard is determined by 40 C.F.R. Part 60, Appendix A, Method 22.

282.     Section 326 IAC 6.8-10-2(11) defines "material" as raw process material, byproduct, intermediate product, waste product, final product, and dust collected by control equipment, having proportion of loose, dry dust equal to or greater than five-tenths percent (0.5%) as measured by the ASTM C-136 method, having potential to emit particulate emissions when disturbed by transfer, processing, and transportation activities.

283.     Section 326 IAC 6.8-10-2(10) defines "in-plant transportation" as transportation of material on plant transportation routes, such as railroads and plant roads, in equipment such as trucks, railroad cars, front end loaders, conveyors, and skip hoists.

284.     ArcelorMittal USA transports molten iron and steel in railcars.

285.     On March 26, 2007, visible emission observations conducted by a certified inspector in accordance with Method 22 at a hot metal railcar located near the No. 2 BOF shop

desulfurization station demonstrated exceedances of the SIP and Title V limit of 0% visible emissions.

286.    ArcelorMittal USA's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor East Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

287.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Eleventh Claim for Relief will continue.

288.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

<u>TWELFTH CLAIM FOR RELIEF</u>
Indiana Harbor East Facility - Iron Beaching
(Title V and Indiana SIP)

289.    Paragraphs 1 through 133, are realleged and incorporated herein by reference.

290.    Section 326 IAC 5-1-2(2)(B) and the Indiana Harbor East Facility Title V Permit require that opacity not exceed an average of 20% (6-minute average).

291.    ArcelorMittal USA reported exceedances of the 20% (6-minute average) source-wide state opacity limit from iron beaching activities at the Pugh Ladle Repair Shop for six 6-minute averaging periods in 2010; at least 12 6-minute averaging periods in 2011; six 6-minute averaging periods in 2012; three 6-minute averaging periods in 2014; and four 6-minute averaging periods in 2017.

292.    Section 326 IAC 6.8-2-17(a) and the Indiana Harbor East Title V Permit require that the sinter plant discharge end baghouse shall meet an emission limit of 0.01 gr/dscf TSP and 17.00 lbs/hr TSP.

293.    ArcelorMittal USA reported an exceedance of 0.01 gr/dscf TSP limit during testing on March 8, 2011.

294.    Section 326 IAC 5-1-2(2)(B) and the Indiana Harbor East Facility Title V Permit require that opacity not exceed an average of 20% in any 6-minute averaging period.

295.    ArcelorMittal USA reported an exceedance of the 20% (6-minute average) source-wide state opacity limit at the Sinter Plant Main Baghouse Stack on May 18, 2015.

296.    ArcelorMittal USA's failure to comply with the requirements of the Indiana SIP and its Title V Permit is a violation of CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

297.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Twelfth Claim for Relief will continue.

298.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

### THIRTEENTH CLAIM FOR RELIEF
#### Indiana Harbor East Facility – Lime Plant
#### (Lime Manufacturing NESHAP, Title V, and Indiana SIP

299.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

300.    The Indiana Harbor East Facility is subject to the Lime Manufacturing NESHAP, 40 C.F.R. Part 63, Subpart AAAAA.

301.    The Lime Manufacturing NESHAP states that the affected facility must meet the applicable emission limit and opacity limit in Table 1 of the subpart.  See 40 C.F.R. § 63.7090(a).

302.    The Lime Manufacturing NESHAP states that for each existing lime kiln and their associated lime coolers that did not have a wet scrubber installed and operating prior to January 5, 2004, PM emissions must not exceed 0.12 pounds per ton of stone feed (lb/tsf). See 40 C.F.R. § 63.7090(a), Table 1(1).

303.    The Indiana Harbor East Title V Permit requires that combined $PM_{10}$ emissions from the No.1 and No. 2 Kiln baghouse stacks not exceed 0.110 lbs/ton and 7.149 lbs/hr.

304.     ArcelorMittal USA reported PM$_{10}$ emissions from the No.1 and No. 2 Kiln baghouse stacks in excess of the SIP limit of 0.110 lbs/ton and 7.149 lbs/hr and NESHAP limit of 0.12 lbs/tsf on November 30, 2011.

305.     ArcelorMittal USA reported an exceedance of the SIP limit of 0.110 lbs/ton and 7.149 lbs/hr and NESHAP limit of 0.12 lbs/tsf at the Lime Plant Kiln 2 baghouse on December 7-8, 2016.

306.     ArcelorMittal USA's failure to comply with the requirements of the Lime Manufacturing NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor West Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart AAAAA; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

307.     Unless restrained by an order of this Court, the violations of the CAA alleged in this Thirteenth Claim for Relief will continue.

308.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

FOURTEENTH CLAIM FOR RELIEF
Indiana Harbor West Facility - Sinter Plant
(Iron and Steel NESHAP, Title V, and Indiana SIP)

309.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

310.    The Indiana Harbor West Facility sinter plant includes a machine used to produce fused clinker-like aggregate or sinter of fine iron-bearing materials suited for use in a blast furnace.  The machine is composed of a continuous traveling grate that conveys a bed of ore fines and other finely divided iron-bearing material and fuel (typically coke breeze), a burner at the feed end of the grate for ignition, and a series of downdraft windboxes along the length of the strand to support downdraft combustion and heat sufficient to produce a fused sinter product.

311.    The sinter plant at the Indiana Harbor West Facility is an "affected source" under the Iron and Steel NESHAP.  See 40 C.F.R. § 63.7782(b).

312.    The Iron and Steel NESHAP requires compliance with each emission limit and opacity limit in Table 1 of Subpart FFFFF applicable to the affected source.  See 40 C.F.R. § 63.7790(a).

313.    The Iron and Steel NESHAP prohibits emissions from each windbox exhaust stream at an existing sinter plant that contain PM in excess of 0.4 lbs/ton of product sinter. See 40 C.F.R. §§ 63.7790(a), Table 1(1) and 63.7833(a), Table 3(1)(a).

314.    On April 24 and June 26, 2007, ArcelorMittal USA conducted stack tests at the Indiana Harbor West Facility sinter plant windbox.  Following the stack tests, ArcelorMittal USA reported PM in excess of 0.4 lbs/ton of product sinter.  ArcelorMittal USA reported continued PM exceedances from the sinter plant windbox after the stack tests.

315.    Section 326 IAC 6.8-2-21, part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit require that TSP (PM) emissions from the sinter plant windbox stack not exceed 49.70 lbs/hour.

316.    ArcelorMittal USA reported exceedances of the 49.70 lbs/hr TSP (PM) limit from the sinter plant windbox stack on two occasions in 2006; three occasions in 2007; and two occasions in 2008.

317.    Section 326 IAC 6.8-2-21, part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit require that TSP (PM) emissions from the sinter plant discharge stack not exceed 0.02 gr/dscf.

318.    ArcelorMittal USA reported exceedances of 0.02 gr/dscf TSP (PM) limit from the sinter plant discharge stack on August 1, 2006.

319.    Section 326 IAC 7-4.1-10(3), part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit prohibit $SO_2$ emissions from the sinter plant windbox from exceeding 1.0 pound of $SO_2$ per ton of process material and 240 pounds of $SO_2$ per hour.

320.    ArcelorMittal USA reported exceedances of the 240 lbs/hr $SO_2$ limit from the sinter plant windbox on September 29, 2006 and July 24, 2007.

321.    ArcelorMittal USA's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor West Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

– 54 –

322.    Unless restrained by an order of this Court, the violations of the CAA alleged in this Fourteenth Claim for Relief will continue.

323.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

FIFTEENTH CLAIM FOR RELIEF
Indiana Harbor West Facility - No. 3 and No. 4 Blast Furnaces
(Iron and Steel NESHAP, Indiana SIP, and Title V)

324.    Paragraphs 1 through 133, are realleged and incorporated herein by reference.

325.    The Indiana Harbor West Facility includes two blast furnaces designated as the Nos. 3 and 4 Blast Furnaces.  The Nos. 3 and 4 Blast Furnaces are used to produce molten iron from iron ore and other iron bearing materials.

326.    The Nos. 3 and 4 Blast Furnaces are each an "affected source" as defined in the Iron and Steel NESHAP.  See 40 C.F.R. § 63.7782.

327.    The Iron and Steel NESHAP requires continuous compliance with each emission limit and opacity limit in Table 1 of Subpart FFFFF applicable to the affected source.  See 40 C.F.R. §§ 63.7790(a), Table 1 and 63.7834, Table 3.

328.    The Iron and Steel NESHAP prohibits the discharge of secondary emissions exiting any opening in the casthouse that exhibit opacity greater than 20% (6-minute average). See 40 C.F.R. §§ 63.7790(a), Table 1(7)(b) and 63.7833(a), Table 3(7)(b).

329.    Section 326 IAC 5-1-2(2)(B), part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit require that visible emissions from the Nos. 3 and 4 Blast Furnace casthouse roof monitors not exceed 20% (6-minute average).

330.    ArcelorMittal USA reported emissions in excess of the 20% (6-minute average) opacity limits from its No. 3 Blast Furnace casthouse roof monitor for two 6-minute averaging periods in 2006; 16 6-minute averaging periods in 2007; 15 6-minute averaging periods in 2008; 28 6-minute averaging periods in 2011; two 6-minute averaging periods in 2012; one 6-minute averaging period in 2013; four 6-minute averaging periods in 2014; one 6 minute averaging period in 2016; four 6-minute averaging periods in 2018; and exceedances of the state and federal 20% (6-minute average) opacity limits at the No. 4 Blast Furnace casthouse roof monitor for two 6-minute averaging periods in 2005; two 6-minute averaging periods in 2006; 15 6-minute averaging periods in 2007; 16 6-minute averaging periods in 2008; four 6-minute averaging periods in 2010; 12 6-minute averaging periods in 2011; one 6-minute averaging period in 2013; seven 6-minute averaging periods in 2014; five 6-minute averaging periods in 2015; and one 6-minute averaging period in 2016.

331.     Section 326 IAC 5-1-2(2)(B), part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit require that visible emissions from the No. 3 Blast Furnace backdraft stack, dust catcher, stove platform, and bleeder not exceed 20% (6-minute average).

332.     ArcelorMittal USA reported exceedances of the 20% (6-minute average) source-wide state opacity limit at the No. 3 Blast Furnace Backdraft Stack for one 6-minute averaging period in 2011; from the No. 3 Blast Furnace Dust Catcher for one 6-minute averaging period in 2014; and from the No. 3 Blast Furnace Stove Platform for one 6-minute averaging period in 2013.

333.     Section 326 IAC 5-1-2(2)(B), part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit require that visible emissions from the No. 4 Blast Furnace backdraft stack, stock house, and bleeder not exceed 20% (6-minute average).

334.     ArcelorMittal USA reported exceedances of the 20% (6-minute average) source-wide state opacity limit at the No. 4 Blast Furnace Stock house for an intermittent duration on January 7, 2011; and at the No. 4 Blast Furnace Backdraft Stack for three 6-minute averaging periods in 2010 and one 6-minute averaging period in 2011.

335.     ArcelorMittal USA's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor West Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

336.     Unless restrained by an order of this Court, the violations of the CAA alleged in this Fifteenth Claim for Relief will continue.

337.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

<u>SIXTEENTH CLAIM FOR RELIEF</u>
Indiana Harbor West Facility - Basic Oxygen Furnace Shop
(Iron and Steel NESHAP, Indiana SIP, and Title V)

338.    Paragraphs 1 through 133, are realleged and incorporated herein by reference.

339.    The BOF shop at the Indiana Harbor West Facility is an "affected source" under the Iron and Steel NESHAP.  <u>See</u> 40 C.F.R. § 63.7782.

340.    The Iron and Steel NESHAP requires continuous compliance with each emission limit and opacity limit set forth in Tables 1 and 3 of Subpart FFFFF applicable to the affected source.  <u>See</u> 40 C.F.R. §§ 63.7790(a) and 63.7833(a).

341.    The Iron and Steel NESHAP prohibits discharge of secondary emissions from a BOF shop roof monitor that exhibit opacity greater than 20% (3-minute average).  <u>See</u> 40 C.F.R. §§ 63.7790(a), Table 1(12) and 63.7833(a), Table 3(12).

342.    ArcelorMittal USA reported exceedances of the 20% (3-minute average) opacity limit at the No. 3 BOF's roof monitor for two 3-minute averaging periods in 2005; one 3-minute averaging period in 2006; 23 3-minute averaging periods in 2007; four 3-minute averaging periods in 2008; ten 3-minute averaging periods in 2009; seven 3-minute averaging periods in 2010; 22 3-minute averaging periods in 2011; five 3-minute averaging periods in 2012; two 3-minute averaging periods in 2013; one 3-minute averaging period in 2014; and one 3-minute averaging period in 2015; two 3-minute averaging periods in 2016; and four 3-minute averaging periods in 2017.

343.    Section 326 IAC 6.8-2-21, part of the Indiana SIP, and the Indiana Harbor West Facility Title V Permit require that emissions from the BOF main stack (also referred to as the electrostatic precipitator stack) not exceed 20% opacity (6-minute average).

344.    ArcelorMittal USA reported exceedances of the 20% (6-minute average) opacity limit at the No. 3 BOF electrostatic precipitator stack for 38 6-minute averaging periods in 2004; 479 6-minute averaging periods in 2005; 184 6-minute averaging periods in 2006; 71 6-minute averaging periods in 2007; 251 6-minute averaging periods in 2008; 27 6-minute averaging periods in 2009; nine 6-minute averaging periods in 2010; 34 6-minute averaging periods in 2011; 17 6-minute averaging periods in 2012; 36 6-minute averaging periods in 2013; 18 6-minute averaging periods in 2014; four 6-minute averaging periods in 2015; 52 6-minute averaging periods in 2016; 58 6-minute averaging periods in 2017; and 14 6-minute averaging periods in 2018.

345.    The Indiana Harbor West Facility Title V Permit, which was in effect from September 22, 2006 through March 8, 2007, required that all air pollution control equipment

listed in the permit and used to comply with an applicable requirement be operated at all times that the emission units vented to the control equipment are in operation.

346.    The Indiana Harbor West Title V Permit requires, among other things, that the main electrostatic precipitator be in operation at all times when associated processes, including BOF processes, are in operation.

347.    On November 29, 2006, EPA inspectors observed that vessel No. 2 in the BOF shop was tapping.  During tapping, EPA inspectors observed emissions escaping from the tap side of the primary hood through the roof monitor.  ArcelorMittal stated that the primary emission control device (the electrostatic precipitator) was not on during tapping.

348.    ArcelorMittal USA's failure to comply with the requirements of the Iron and Steel NESHAP, the Indiana SIP, and its Title V Permit at the Indiana Harbor West Facility are violations of CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63, Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70, respectively.

349.    Unless restrained by an order of this Court, the violations of the Act alleged in this Sixteenth Claim for Relief will continue.

350.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject ArcelorMittal USA to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation

occurring on or after November 3, 2015. Pursuant to Ind. Code §§ 13-13-5-1, 13-13-5-2, and 13-30-4-1, Indiana may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

SEVENTEENTH CLAIM FOR RELIEF
Cleveland Facility - No. 1 and No. 2 Basic Oxygen Furnace Shops
(Iron and Steel NESHAP, Ohio SIP, and Title V)

351.    Paragraphs 1 through 133 are realleged and incorporated herein by reference.

352.    The No. 1 and No. 2 BOF shops at the Cleveland Facility are each an "affected source" under the Iron and Steel NESHAP. See 40 C.F.R. § 63.7782.

353.    The Iron and Steel NESHAP requires continuous compliance with each emission limit and opacity limit in Tables 1 and 3 of Subpart FFFFF applicable to the affected source. See 40 C.F.R. §§ 63.7790(a), Table 1 and 63.7834, Table 3.

354.    The Iron and Steel NESHAP prohibits PM emissions in excess of 0.03 gr/dscf from a primary emission control system for a BOF with a closed hood system during the primary oxygen blow. See 40 C.F.R. §§ 63.7790(a), Table 1(9)(a) and 63.7834, Table 3(9)(a).

355.    ArcelorMittal Cleveland reported exceedances of the 0.03 gr/dscf limit from the No. 1 BOF shop (P905/P906) on October 20-21, 2011; and from September 9, 2014 to October 3, 2014.

356.    The Iron and Steel NESHAP prohibits discharge of secondary emissions from a BOF shop roof monitor that exhibit opacity greater than 20% (3-minute average). See 40 C.F.R. §§ 63.7790(a), Table 1(12) and 63.7834, Table 3(12)(a).

357.    OAC Rule 3745-17-07(B), part of the Ohio SIP, and Section III.A.I.1 of the Cleveland Facility Title V Permit require that visible particulate emissions from any fugitive dust source not exceed 20% opacity (3-minute average).

358.    ArcelorMittal Cleveland reported exceedances of the 20% opacity (3-minute average) limit from the No. 1 BOF (P905/P906) shop roof monitor for one 3-minute averaging period in 2007 and two 3-minute averaging periods in 2010.

359.    ArcelorMittal Cleveland reported exceedances of the 20% opacity (3-minute average) limit from the No. 2 BOF (P925/926) shop roof monitor for one 3-minute averaging period in 2007; and one 3-minute averaging period in 2012.

360.    OAC Rule 3745-17-07(A)(1)(b), part of the Ohio SIP, and Part III.A.I.1 of the Cleveland Facility Title V Permit prohibit visible particulate emissions from any stack in excess of 20% opacity (6-minute average).

361.    ArcelorMittal Cleveland reported exceedances of the 20% opacity (6-minute average) limit from the No. 1 BOF (F011) hot metal transfer baghouse for four 6-minute averaging periods in 2007; two 6-minute averaging periods in 2009; two 6-minute averaging periods in 2010; and four 6-minute averaging periods between April 1, 2011 and December 31, 2017.

362.    ArcelorMittal Cleveland reported exceedances of the 20% (6-minute average) electrostatic precipitator control opacity limit at the North Stack for five 6-minute averaging periods in 2007; seven 6-minute averaging periods in 2008; 12 6-minute averaging periods in 2013; 33 6-minute averaging periods in 2014; ten 6-minute averaging periods in 2015; 13 6-minute averaging periods in 2016; five 6-minute averaging periods in 2017; ten 6-minute

averaging periods in 2018; and at the South Stack for four 6-minute averaging periods in 2007;
three 6-minute averaging periods in 2008; two 6-minute averaging periods in 2012; 20 6-minute
averaging periods in 2013; 20 6-minute averaging periods in 2014; 33 6-minute averaging
periods in 2015; nine 6-minute averaging periods in 2016; seven 6-minute averaging periods in
2017; and 12 6-minute averaging periods in 2018.

363.    OAC Rule 3745-31-05(A)(3), part of the Ohio SIP, and Part III.A.I.2.2c of the
Cleveland Facility Title V Permit prohibit visible emissions from any baghouse stack in excess
of 5% opacity (6-minute average).

364.    ArcelorMittal Cleveland reported exceedances of the 5% opacity (6-minute
average) limit from the No. 2 BOF Shop (F209) baghouse stacks for one heat on December 26,
2015 and four heats on December 27, 2015.

365.    ArcelorMittal Cleveland's failure to comply with the requirements of the Iron and
Steel NESHAP, the Ohio SIP, and its Title V Permit at the Cleveland Facility are violations of
CAA Section 112, 42 U.S.C. § 7412, and the implementing regulations at 40 C.F.R. Part 63,
Subpart FFFFF; CAA Sections 110 and 502, 42 U.S.C. §§ 7410, 7661a; and the Title V
implementing regulations at 40 C.F.R. Part 70, respectively.

366.    Unless restrained by an order of this Court, the violations of the CAA alleged in
this Seventeenth Claim for Relief will continue.

367.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the
Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R.
§ 19.4, the violations set forth above subject ArcelorMittal Cleveland to injunctive relief and
civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004

and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on

or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation

occurring on or after November 3, 2015.  Pursuant to Ohio Rev. Code § 3704.06, Ohio may seek

injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air

pollution control laws in a civil action commenced in any court with jurisdiction.

EIGHTEENTH CLAIM FOR RELIEF<br>Cleveland Facility - Boiler D<br>(Ohio SIP and Title V Permit)

368.     Paragraphs 1 through 133 are realleged and incorporated herein by reference.

369.     OAC Rule 3745-17-07(A)(1)(b), part of the Ohio SIP, and Part III.A.I.1 of the

Cleveland Facility Title V Permit prohibit visible particulate emissions from any stack in excess

of 20% opacity (6-minute average).

370.     ArcelorMittal Cleveland reported exceedances in excess of the 20% opacity (6-

minute average) limit from the Cleveland Facility's Boiler D stack for 17 6-minute averaging

periods in 2009.

371.     ArcelorMittal Cleveland's failure to comply with the requirements of the Ohio

SIP and its Title V Permit at the Cleveland Facility are violations of CAA Sections 110 and 502,

42 U.S.C. §§ 7410, 7661a; and the Title V implementing regulations at 40 C.F.R. Part 70,

respectively.

372.     Unless restrained by an order of this Court, the violations of the CAA alleged in

this Eighteenth Claim for Relief will continue.

373.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), and pursuant to the

Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R.

– 64 –

§ 19.4, the violations set forth above subject ArcelorMittal Cleveland to injunctive relief and civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004 and up to and including January 12, 2009; up to $37,500 per day for each violation occurring on or after January 13, 2009 through November 2, 2015; and up to $97,229 for each violation occurring on or after November 3, 2015.  Pursuant to Ohio Rev. Code § 3704.06, Ohio may seek injunctive relief and civil penalties not to exceed $25,000 per day of any violation of air pollution control laws in a civil action commenced in any court with jurisdiction.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, based upon all the allegations contained in paragraphs 1 through 373 above, the United States of America, Indiana, and Ohio request that this Court:

1.      Permanently enjoin Defendants from operating the Facilities, including the construction of future modifications or reconstructions, except in accordance with the Clean Air Act, the Indiana SIP, IAC Title 326, the Ohio SIP, Ohio Rev. Code Title 37, and any applicable regulatory requirements and permits;

2.      Order Defendants to remedy their past violations by, among other things, requiring Defendants to install, as appropriate, the best available control technology, or such other emissions control technology required by law, at the Facilities for each pollutant subject to regulation under the Clean Air Act;

3.      Order Defendants to apply for permits that are in conformity with the requirements of the Clean Air Act and SIP requirements;

4.      Order Defendants to comply with the NESHAP and NSPS provisions of the Clean Air Act, the SIPs, and the Title V Permits;

5.      Assess civil penalties against Defendants for up to the amounts provided in the

Clean Air Act, IAC Title 326, and Ohio Rev. Code Title 37;

8.      Award Plaintiffs their costs of this action; and,

9.      Grant such other relief as the Court deems just and proper.

Signature page for Complaint in *UNITED STATES OF AMERICA, et. al v. ARCELORMITTAL USA et.al*, (N.D. Ind.)

Respectfully Submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


  s/ Jeffrey A. Spector
JEFFREY SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
(202) 514-4432
(202) 616-6584 (fax)
Jeffrey.Spector@usdoj.gov


THOMAS L. KIRSCH II
United States Attorney
Northern District of Indiana


  s/ Wayne T. Ault
WAYNE T. AULT
Assistant United States Attorney
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN  46320
(219) 937-5500
(219) 852-2770 (fax)
Wayne.Ault@usdoj.gov

Of Counsel:

CYNTHIA A. KING
Associate Regional Counsel
U.S. EPA Region 5
77 West Jackson Blvd., C-14J
Chicago, IL  60604

Signature page for Complaint in *UNITED STATES OF AMERICA, et. al v. ARCELORMITTAL USA et.al*, (N.D. Ind.)

FOR PLAINTIFF STATE OF OHIO


Date: _____                    DAVE YOST
                                           OHIO ATTORNEY GENERAL


                                           _s/ Reid T. Caryer_____
                                           REID T. CARYER (0079825)
                                           Assistant Attorney General
                                           30 E. Broad Street, 16th Floor
                                           Columbus, OH  43215
                                            (614) 995-0247
                                            (877) 647-2550 (fax)
                                           reid.caryer@ohioattorneygeneral.gov




                                           _s/ Wednesday M. Szollosi_____
                                           WEDNESDAY M. SZOLLOSI (0075655)
                                           (*pro hac vice pending*)
                                           Assistant Attorney General
                                           Environmental Enforcement Section
                                           Toledo Regional Office
                                           One Government Center, Suite 1340
                                           Toledo, OH  43604
                                           (419) 245-2550
                                           (877) 626-9316 (fax)
                                           wednesday.szollosi@ohioattorneygeneral.gov

Signature page for Complaint in *UNITED STATES OF AMERICA, et. al v. ARCELORMITTAL USA et.al*, (N.D. Ind.)

FOR PLAINTIFF STATE OF INDIANA


CURTIS HILL
Attorney General of Indiana


_____          _s/ Patricia Orloff Erdmann_____
Date                             PATRICIA ORLOFF ERDMANN
                                 Chief Counsel for Litigation
                                 Office of the Indiana Attorney General
                                 Indiana Government Center South, Fifth Floor
                                 320 W. Washington Street
                                 Indianapolis, IN  46204